[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR NEW TRIAL
The plaintiff moves for a new trial on the grounds that the undersigned judicial authority failed to disclose that while in private practice, he had practiced with Attorney Kevin Murphy and Attorney Karen Karpie, principals in the law firm that represented the defendant, and because the undersigned did not, therefore, recuse himself. The plaintiff claims that there existed a relationship that "gave rise to an appearance of bias or prejudice and/or actual bias." The plaintiff also claims actual bias by this judge. The motion is denied.
First, "[a] motion to disqualify a judicial authority . . . shall be accompanied by an affidavit setting forth the facts relied upon to show the grounds for disqualification and a certificate of the counsel of record that the motion is made in good faith. The motion shall be filed no less than ten days before the time the case is called for trial or hearing, unless good cause is shown for failure to file within such time. Practice Book § 997, now Practice Book (1998 Rev.) §1-23. This provision creates a mandatory procedure to be followed by any party seeking to recuse a judge. See State v. Cook,183 Conn. 520, 521-23, 441 A.2d 41 (1981). State v. Weber,6 Conn. App. 407, 412, 505 A.2d 1266, cert. denied, 199 Conn. 810, CT Page 2767508 A.2d 771 (1986)." (Internal quotation marks omitted.) NorseSystems, Inc. v. Tingley Systems, Inc., 49 Conn. App. 582,588-89, 715 A.2d 807 (1998). "Adherence to th[e]se procedures is necessary to obtain proper judicial review." State v. Santangelo,205 Conn. 578, 585, 534 A.2d 1175 (1987); see State v. Teel,42 Conn. App. 500, 506-07, 681 A.2d 974, cert. denied,239 Conn. 921, 682 A.2d 1012 (1996) (failure to comply with Practice Book rule re recusal deems record inadequate for review under first prong of Evans-Golding test). "A motion to disqualify a judicial officer because of the claimed possibility of bias is a serious matter. If counsel makes such a motion, it is not asking too much to require that he or she follow the established rules that treat it as such." State v. Santangelo, supra, 205 Conn. 601; see alsoWeyel v. Catania, 52 Conn. App. 292, 298, 728 A.2d 512, cert. denied, 248 Conn. 922, 733 A.2d 846 (1999). Here, the plaintiff's motion is not accompanied by the required affidavit or certificate.
Second, the motion is untimely. Although the plaintiff was not required to comply with that portion of Practice Book § 1-23
that requires that a motion for recusal be "filed no less than ten days before the time the case is called for trial or hearing" because "good cause is shown for failure to file within such time,"[1] such a motion still "must be asserted seasonably or it will be deemed to have been waived." Cameron v. Cameron,187 Conn. 163, 168, 444 A.2d 915 (1982). "The rationale for this rule is that parties cannot be allowed to anticipate a favorable decision, reserving a right to impeach it or set it aside if it happens to be against them, for a cause which was well known to them before or during the trial." (Internal quotation marks omitted.) Barca v. Barca, 15 Conn. App. 604, 608, 546 A.2d 887, cert. denied, 209 Conn. 824, 552 A.2d 430 (1988). Where a party or his attorney is aware of what he considers grounds for recusal before judgment but waits until after judgment to move for recusal, the motion is untimely. Jazlowiecki v. Cyr,4 Conn. App. 76, 78-79, 492 A.2d 516 (1985) While the plaintiff's attorney
claims he was informed by a third person of the facts giving rise to his motion only after the verdict, he presented no such evidence, nor requested an opportunity to do so. It is axiomatic that representations of counsel are not evidence. State v.Santangelo, supra, 205 Conn. 585.
Third, no grounds exist for recusal. Practice Book § 1-22
provides in relevant part: "A judicial authority shall, upon CT Page 2768 motion of either party or upon its own motion, be disqualified from acting in a matter if such judicial authority is disqualified from acting therein pursuant to Canon 3(c) of the Code of Judicial Conduct. . . ." The Code of Judicial Conduct, Canon 3(c)(1) provides in pertinent part: "A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned. . . ." "Disqualification of a trial judge is not dependent on proof of actual bias. The appearance and existence of impartiality are both essential elements of a fair trial. Cameron v. Cameron,187 Conn. 163, 168-69, 444 A.2d 915 (1982); Postemski v. Landon,9 Conn. App. 320, 322, 518 A.2d 674 (1986). State v. Santangelo, [supra, 205 Conn. 602]." (Internal quotation marks omitted.)Weyel. v. Catania, supra, 52 Conn. App. 299. "The standard to be employed is an objective one, not the judge's subjective view as to whether he or she can be fair and impartial in hearing the case. . . . Under Canon 3(c)(1) of the Code of Judicial Conduct [a] judge should disqualify himself [or herself] in a proceeding in which his [or her] impartiality might reasonably be questioned . . . . Any conduct that would lead a reasonable [person] knowing all the circumstances to the conclusion that the judge's impartiality might reasonably be questioned is a basis for the judge's disqualification. Thus, an impropriety or the appearance of impropriety that would reasonably lead one to question the judge's impartiality in a given proceeding clearly falls within the scope of the general standard. . . . The question is not whether the judge is impartial in fact. It is simply whether another, not knowing whether or not the judge is actually impartial, might reasonably question his [or her] impartiality, on the basis of all of the circumstances." (Emphasis in original; internal quotation marks omitted.) Papa v. New HavenFederation of Teachers, 186 Conn. 725, 744-746, 444 A.2d 196
(1982).
The plaintiff claims that there existed an appearance of impropriety because the undersigned judicial authority had practiced with Attorney Kevin Murphy and Attorney Karen Karpie, principals of the law firm that represented the defendant, twentyyears ago.[2] In mid-1976, immediately after graduation from law school, I became associated with the law firm of Bai, Pollock Dunnigan. Thereafter, Attorney Kevin Murphy and Attorney Karen Karpie became associates with that law firm. I left that firm in May, 1980. See Martindale-Hubbell Law Directory, 1977-1980. Attorneys Murphy and Karpie left sometime later in the 1980s and established the law firm that now bears their name. CT Page 2769
The controlling standard on whether a judge should recuse himself is not whether his impartiality might be questioned by a disappointed litigant but "whether a reasonable person who is aware of all the circumstances surrounding the judicial proceeding would question the judge's impartiality." LaBow v.LaBow, 13 Conn. App. 330, 334, 537 A.2d 137, cert. denied,207 Conn. 806, 540 A.2d 374 (1988). In Bonelli v. Bonelli,214 Conn. 14, 570 A.2d 189 (1990), the Supreme Court held that a formal cocounsel relationship between a judge and the lawyer for a litigant that had ended fourteen months prior to the judge's involvement with the case was not a relationship in which the judge's impartiality might reasonably be questioned. Said the court: "There is nothing about the cocounsel relationship itself that would lead a reasonable person to question the judge's impartiality. A review of federal and state case law indicates that much closer prebench contacts between judge and counsel have been rejected as grounds for disqualification under Canon 3(c)Disqualification is not necessarily required even when his formerlaw partner appears before a trial judge." (Emphasis added.) Id.,
20. The court also stated that: "In order to assess disqualification in the context of a prior cocounsel relationship, the important factors to be considered are the closeness of the cocounsel relationship, the possibility of any financial benefit to the judge resulting from the cocounsel association, the existence of any social or personal relationship between the trial judge and counsel, and the amount of time that has elapsed after termination of the cocounsel relationship. "Id., 19. The court did not state that the existence of any single factor was sufficient to warrant recusal. To the contrary, the court referred to an "[e]xamination of the totality of the circumstances. . . ." Id.
The American Bar Association Committee on Ethics and Professional Responsibility, in Informal Opinion 87-1524 (December 14, 1987), has squarely held that a judge is not disqualified from presiding at a trial solely because of a former association in private practice more than two years previously with counsel for a party. See also Valley v. Rapides ParishSchool Bd., 992 F. Sup. 848 (W.D.La. 1998); National City Bank,Ind. v. Shortridge, 691 N.E.2d 1210 (Ind. 1998); In re Affidavitof Bias, 947 P.2d 1152 (Utah 1997); Use v. Use, 654 So.2d 1355
(La.App. 1995); Metzger v. Sebek, 892 S.W.2d 20 (Tex.App. 1994); Annot., 85 A.L.R.4th 700 (1991), "Judge's Previous Legal Association With Attorney Connected To Current Case as Warranting CT Page 2770 Disqualification."
Here, Attorneys Murphy and Karpie were not even former law partners of the undersigned. They were former fellow associates, 20 years ago, in another law firm. Moreover, there is no claim, much less evidence, that this two-decades past "relationship [has been] accompanied by an[y] additional association, such as close personal or social involvement, or an ongoing financial relationship [which] may cause a reasonable person to question the judge's impartiality." Id.
The plaintiff finally claims that the undersigned harbored actual bias against him. Canon 3(c) of the Code of Judicial Conduct also provides that a judge must recuse himself if "the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding. . . ." This claim is based on the plaintiff's claims of error; there is no claim that I have ever known the plaintiff's attorneys or any parties to this litigation. The law is that adverse rulings of a court do not demonstrate personal bias so as to warrant disqualification. Bieluch v. Bieluch,199 Conn. 550, 553, 509 A.2d 8 (1986)
In a footnote to his motion, the plaintiff also alleges: "Attorney Karpie appeared in the courtroom on at least two or three occasions during the course of trial. On one occasion, she was warmly greeted by Judge Levin from the bench." Such expressions, are not grounds for recusal. "The `taking of the silk' by a judge does not bar him from wearing the fabric of ordinary social civility in the presence of all persons, lay or professional." Perlmutter v. Johnson, 6 Conn. App. 292, 296,505 A.2d 13, cert. denied, 200 Conn. 801, 509 A.2d 517 (1986), cert. denied, 479 U.S. 1035, 107 S.Ct. 886, 93 L.Ed.2d 839 (1986) Such a greeting, if it occurred, was probably on the record and the degree of its "warmth," therefore, may be roughly calibrated. Because of the plaintiff's claim of actual bias, I have requested the court monitor who recorded the trial proceedings to preserve the actual tape recording of the trial so that appellate authority may more accurately gauge the demeanor of this judge during the trial, and not be restricted to "the cold black and white of a printed record." (Internal quotation marks omitted.)State v. Fernandez, 198 Conn. 1, 13, 501 A.2d 1195 (1985).[3]
The motion for a new trial is denied. CT Page 2771
Bruce L. Levin Judge of the Superior Court