[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: PROSECUTOR'S TESTIMONY
Murray Colton (hereinafter "Colton") seeks dismissal on double jeopardy grounds, of the murder charge brought against him. Colton has already been tried three times, convicted once, had that conviction overturned on appeal and remanded for a new trial. See State v. Colton, 227 Conn. 231 (1993) (Colton I). He has also successfully appealed the previous denial of the pending motion to dismiss. See State v. Colton, 234 Conn. 683 (1995) (Colton II). In accordance with the mandate of the Supreme Court, an evidentiary hearing has been conducted on the merits of Colton's claim that prosecutorial misconduct at his third trial imposes a double jeopardy bar to any further prosecution.
Having presented evidence over eight days of hearings, Colton now seeks to call the prosecutor at the third trial, Assistant State's Attorney James G. Clark, as a witness. The state objects to Assistant State's Attorney Clark being required to testify. For the reasons set forth below, the court overrules the state's objection and directs that Colton be permitted to call Assistant State's Attorney Clark as a witness.
Discussion
In order to prevail on his motion to dismiss Colton must prove that the state engaged in prosecutorial misconduct "undertaken with the deliberate purpose of depriving the defendant of double jeopardy's shield, that is to say, only a high-handed wrong intentionally directed against the defendant's constitutional right will trigger his right not to be twice put in jeopardy for the same offense." Colton II, supra,234 Conn. at 700. Colton must also prove that "the misconduct of the prosecutor is undertaken not simply to prevent an acquittal, but to prevent an acquittal that the prosecutor believed at the time was likely to occur in the absence of his misconduct." Id.
The prosecutor's testimony may only be obtained if Colton first makes out a factual, prima facie showing of prosecutorial misconduct so as to create a compelling need for the prosecutor's testimony. Colton II, supra 234 Conn. at 703.
In this regard, Colton claims that the state engaged in intentional prosecutorial misconduct when it presented its key CT Page 2316 witness, Janice Tourangeau, as a reformed narcotic user and reformed prostitute in light of the following facts that it either knew or should have known:
1. On June 14, 1990 (between the second and third trial), Tourangeau was arrested buying narcotics by the New Haven Police Department. Notwithstanding her claims that she was merely buying drugs for someone else, her then boyfriend, Dennis Maluk, would have testified that she approached him earlier in the day of June 14, 1990 asking for money to buy drugs for her own use.
2. On October 10, 1990 (again between the second and third trials), Tourangeau was arrested at the Mayflower Truck Stop, Milford, Connecticut under circumstances that suggested that she was engaged in prostitution.
3. Lieutenant Michael Sweeney, New Haven Police Department, was very familiar with Tourangeau and had more than seventy-five encounters with her between the time of the murder and the third trial. At each encounter, Sweeney observed Tourangeau to appear to be under the influence of narcotics.
4. Inspector Leonard Pastore had street contacts in the Kimberly Avenue area of New Haven who told him that they believed that Tourangeau was continuing to use drugs during the period relevant to Colton's motion.
5. The New Haven Police Department scheduled a polygraph examination for Tourangeau shortly after the he came forward with information about the murder. On the night before the polygraph, and despite being in a motel room arranged for by the police, Tourangeau left the room and used narcotics.
6. Tourangeau's friends, family and associates believed that she continuously used drugs during the relevant periods of time.
7. Medical, psychiatric, Juvenile Court and Department of Children and Family records have information within them that is inconsistent with Tourangeau's claims of reform.[1]
In response, the state argues that all of these matters fall under the general category of the state's duty to investigate a witness. The state claims that such a duty does not go as far as the defense suggests and further, that the information, even if known, is not material in the sense that its disclosure would CT Page 2317 likely change the result of the trial. Based on this, the state claims that Colton has not made out a prima facie case. The state also claims that there is no compelling need for Assistant State's Attorney Clark to provide testimony because such testimony is not necessary in this case.
It is important to state the standard that the court is applying in determining whether Colton has made out a prima facie case of prosecutorial misconduct, Professor Wigmore notes that the term "prima facie" case is used in two senses. 9 Wigmore, Evidence (3d Ed.) § 2494. First, it identifies the situation where the proponent, having the first duty of producing some evidence in order to have his case submitted to the fact-finder, has fulfilled that duty and may properly claim that the fact-finder be allowed to consider his case. In this sense, the phrase "prima facie evidence" means evidence which, if credited, is sufficient to establish the fact or facts which it is adduced to prove. Berchtold v. Maggi, 191 Conn. 266, 270 (1983).
The second way in which the term "prima facie case" is used is in those situations where the proponent, having the burden of proving the issue, has not only removed by sufficient evidence the duty of producing evidence to get past the judge or jury, but has gone further, and either by means of a presumption or by a general mass of strong evidence, has entitled himself to a ruling that the opponent should fail if he does nothing more in the way of producing evidence. Id.
In deciding the question of the prosecutor's testimony, the court is applying the standard of "prima facie case" in the first sense. Accordingly, the ruling herein should not be viewed as prejudging the ultimate decision on the motion to dismiss. As stated in Berchtold v. Maggi:
 Once a case is ultimately presented to the factfinder for final decision, an entirely different analysis is applied. Rather than being required to take as true the evidence offered by the plaintiff, the trier of fact can disbelieve any evidence even if uncontradicted. In addition, the trier of fact is no longer bound to interpret the evidence in the light most favorable to the plaintiff, or to draw every reasonable inference therefrom, for it is axiomatic that it is within the province of the trier of facts to assess the credibility of witnesses.
CT Page 2318
191 Conn. at 272
Applying this standard, the court finds that Colton has presented enough evidence to meet the threshold for calling the prosecutor to testify. In addition, given the "intent" aspect of the prosecutorial misconduct claim as it relates to the application of the double jeopardy bar, there is a compelling need for the testimony. Despite the numerous witnesses who have testified thus far, there is no other available source for this sort of intent evidence to be presented in any meaningful way.
Conclusion
The state's objection to Colton's request to call Assistant State's Attorney Clark as a witness is overruled. Assistant State's Attorney Clark shall testify at a date and time to be determined by the court.
So ordered, at New Haven, Connecticut this 21st day of April 1997.
Devlin, J.